# No. 25-1697

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

ANDOWAH NEWTON,
Plaintiff-Appellant,

v.

LVMH MOET HENNESSY LOUIS VUITTON INC.
AND RODNEY C. PRATT,
Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of New York
No. 1:23-cv-10753 - Judge Loretta A. Preska

**BRIEF OF NATIONAL WOMEN'S LAW CENTER, AMERICAN ASSOCIATION FOR JUSTICE, EQUAL RIGHTS ADVOCATES, NATIONAL EMPLOYMENT LAWYERS ASSOCIATION, AND PUBLIC JUSTICE AS AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL**

Lily Braafladt*
Rachel Smith
Elizabeth E. Theran
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Tel.: (202) 588-5180
etheran@nwlc.org

Jeffrey R. White
AMERICAN ASSOCIATION FOR JUSTICE
777 6th Street NW, #300
Washington, DC 20001
Tel.: (202) 617-5620
Jeffrey.White@justice.org

*Counsel for Amici Curiae NWLC, AAJ, ERA, NELA, and PJ*

* Request for recent graduate to appear
pursuant to L.R. 46.1(e) pending

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Amici Curiae National Women's Law Center, American Association for Justice, Equal Rights Advocates, National Employment Lawyers Association, and Public Justice state that they are non-profit organizations, do not issue stock, and have no parent corporations.

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................ i

Table of Authorities ................................................................................ iii

Interest of Amici Curiae ............................................................................1

Statement of the Case ...............................................................................3

Summary of Argument ..............................................................................8

Argument ..................................................................................................11

    I.    Under Supreme Court and Second Circuit precedent, Ms. Newton's retaliation claim accrued after the EFAA's enactment. .......................11

        A.    A retaliatory hostile-work-environment claim reaccrues each time an act contributing to that environment occurs. ......................................12

        B.    Ms. Newton plausibly alleged a retaliatory hostile work environment spanning before and after the EFAA's passage, and the district court erred in holding otherwise. ........................................................14

            1.    Ms. Newton plausibly alleged a retaliatory hostile work environment that continued after March 2022. ................................15

            2.    The district court erred in finding Ms. Newton's post-EFAA allegations unrelated to the retaliation she alleged pre-EFAA. .......................18

    II.   Because Ms. Newton's case relates to a sexual harassment dispute, her entire case is exempt from arbitration under the EFAA. ..............................24

        A.    Congress intended the EFAA to exempt entire cases, not just individual claims, from arbitration. ......................................................24

        B.    Ms. Newton's proposed claims are part of this case and therefore exempt from arbitration. ..............................................................26

        C.    Keeping entire cases together promotes efficiency, protects survivors, and reflects the realities of harassment. ..........................................28

Conclusion ...............................................................................................30

Certificate of Compliance ........................................................................31

Certificate of Service ...............................................................................32

Appendix (Additional Amici Statements of Interest) ...............................33

# TABLE OF AUTHORITIES

**Cases**

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
326 F.3d 63, 73 (2d Cir. 2003).................................................................29

*Banks v. General Motors, LLC*,
81 F.4th 242 (2d Cir. 2023).......................................................................9

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ....................................................................................21

*Davis-Garett v. Urban Outfitters, Inc.*,
921 F.3d 30 (2d Cir. 2019).......................................................................14

*Ding v. Structure Therapeutics, Inc.*,
755 F. Supp. 3d 1200 (N.D. Cal. 2024) ..................................................28

*Gorzynski v. JetBlue Airways, Corp.*,
596 F.3d 93 (2d Cir. 2010).......................................................................29

*Johnson v. Everyrealm, Inc.*,
657 F. Supp. 3d 535 (S.D.N.Y. 2023)........................................ 24, 25, 28

*Jute v. Hamilton Sundstrand Corp.*,
420 F.3d 166 (2d Cir. 2005)......................................................................13

*King v. Aramark Servs. Inc.*,
96 F.4th 546 (2d Cir. 2024)........................................... 15, 16, 17, 22

*McGullam v. Cedar Graphics, Inc.*,
609 F.3d 70 (2d Cir. 2010)........................................................... 16, 19

*Morgan v. Nat'l R.R. Passenger Corp.*,
232 F.3d 1008 (9th Cir. 2000) .................................................................15

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)............................................................... passim

*Olivieri v. Stifel, Nicolaus & Co.*,
112 F.4th 74 (2d Cir. 2024)................................................... passim

iii

*Randolph v. Ohio Dep't of Youth Servs.*,
453 F.3d 724 (6th Cir. 2006)........................................................................22

*Sooroojballie v. Port Authority*,
816 F. App'x 536 (2d. Cir. 2020) (summary order) ............................................13

**Statutes**

42 U.S.C. § 1981 .......................................................................................9

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act,
9 U.S.C. §§ 401–02 ............................................................... 5, 25, 26, 27

New York State Human Rights Law,
N.Y. Exec. L. §§ 290 *et seq.* ......................................................................9

Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 ......................................................11

**Other Authorities**

168 Cong. Rec. H991 (daily ed. Feb. 7, 2022)
(statement of Rep. Bobby Scott)............................................................ 26, 29

168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst)......27

168 Cong. Rec. S627 (daily ed. Feb. 10, 2022)
(statement of Sen. Kirsten Gillibrand)...................................................... 25, 26

*Elect*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/elect (last
visited Sept. 29, 2025)...............................................................................27

H.R. Rep. No. 117-234 ..............................................................................26

Resolving Sexual Assault and Harassment Disputes Act of 2021, S.3143, 117th
Cong. (2021) ..........................................................................................26

**Rules**

Fed. R. Civ. P. 18....................................................................................27

Fed. R. Civ. P. 20....................................................................................27

iv

## INTEREST OF AMICI CURIAE[1]

This brief is filed by Amici National Women's Law Center, American Association for Justice, and three additional organizations committed to gender justice, including the rights of survivors of sex-based harassment and sexual assault.

The National Women's Law Center ("NWLC") is a nonprofit organization that fights for gender justice in the courts, in public policy, and in our society, and works across issues that are central to the lives of women and girls, especially women of color, LGBTQI+ people, and low-income women. Since 1972, NWLC has worked to advance educational opportunities, workplace justice, health and reproductive rights, and income security. The NWLC Fund houses and administers the TIME'S UP Legal Defense Fund, which improves access to justice for those facing workplace sex harassment, including through grants to support legal representation. NWLC has participated in numerous workplace civil rights cases in federal and state courts, including through filing amicus briefs that highlight the critical importance of retaining litigation in court as an option for survivors of sexual violence seeking justice.

---

[1] No party's counsel authored this brief in whole or in part, nor did a party, its counsel, or any other person contribute money to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E). Plaintiff consents to, and Defendants do not oppose, the filing of this brief.

The American Association for Justice ("AAJ") is a national, voluntary bar association established in 1946 to strengthen the civil justice system, preserve the right to trial by jury, and protect access to the courts for those who have been wrongfully injured. With members in the United States, Canada, and abroad, AAJ is the world's largest plaintiff trial bar. AAJ's members primarily represent plaintiffs in personal injury actions, employee rights cases, consumer cases, and other civil actions, including claims for sexual assault and sexual harassment. Throughout its more than 79-year history, AAJ has served as a leading advocate for the right of all Americans to seek legal recourse for wrongful conduct.

Additional amici are:

- Equal Rights Advocates,

- National Employment Lawyers Association, and

- Public Justice.

Statements of interest for additional amici curiae are attached in the Appendix.

## STATEMENT OF THE CASE

Plaintiff Andowah Newton joined Defendant LVMH Moet Hennessey Louis Vuitton Inc. ("LVMH") as Director, Litigation Counsel in 2015 and achieved success. App'x 19.[2] Her supervisor, General Counsel Louise Firestone, described her as "a client's dream" and stated that she "reflects the highest degree of honesty and ethics in all she does." *Id.* In March 2017, LVMH promoted Ms. Newton to Vice President of Legal Affairs, making her the only Black employee at the Director level or above at that time. App'x 20–21.

Between 2015 and 2018, Ms. Newton began informally reporting that a colleague was sexually harassing her. App'x 27. On one occasion, Ms. Newton reported that the colleague pressed his pelvis and genitals against her while reaching for a phone in her office. App'x 23. When she repeatedly reported the colleague's inappropriate behavior, Employment Counsel Frank Martinez stated he was unable to report the behavior to HR, ignored her complaints, and eventually suggested that she confront her harasser directly. App'x 27–28.

In May 2018, after Ms. Newton emailed her harasser and asked him to stop his "unwanted" conduct, Martinez reprimanded her, complaining that he "now ha[d] to report this." App'x 28–29. Within a couple of days, LVMH Senior

---

[2] Because the district court based its decision on the facts as alleged in the complaint, we do the same for purposes of this narrative.

3

Director of Talent Emma Ancelle told Ms. Newton that she had concluded the harassment was "just a misunderstanding" or "mere flirting" and that the matter was closed. App'x 32. On June 3, 2018, Ms. Newton filed a formal complaint with HR. App'x 35. The following day, she alleged, Firestone, who was visibly upset with her, asserted that LVMH's internal investigation had determined "there was clearly no violation of company policy or the law." App'x 36.

Following her report of sexual harassment and assault, Ms. Newton alleged that various LVMH officials began retaliating against her through exclusion and unfair criticism. *See* App'x 29, 43–44. Firestone "avoid[ed] in person interactions with Ms. Newton," excluded her from speaking at a work presentation, and gave her a negative performance review for the first time. App'x 45, 48, 42–43. Ms. Newton also alleged that the LV Brand General Counsel "largely ignored" her at a conference, an employment counsel excluded her from selecting a new paralegal on whom she would be heavily relying, an HR executive ignored her at an event, and a colleague refused to send her relevant files for a case she took over from them. App'x 48–55, 58–59, 65–66. Meanwhile, in 2018 LVMH promoted Ms. Newton's alleged harasser. App'x 45.

In April 2019, Ms. Newton filed a sexual harassment and retaliation lawsuit against LVMH in New York State Supreme Court. App'x 54. LVMH immediately moved to compel arbitration. *Id.* The trial court initially denied LVMH's motion,

4

but the Appellate Division reversed in March 2021, forcing Ms. Newton's claims into arbitration. *Id.* LVMH then commenced its own arbitration against her in June 2021, requesting she pay its legal fees related to the appeal. *See* SA 9.

From May through August 2019, while these proceedings were ongoing, Firestone took full control over one of Ms. Newton's matters without notifying her, excluded her from the hiring process for an intern, and began micromanaging her on tasks she had previously handled herself. App'x 48–49. Ms. Newton alleged that this pattern continued throughout 2020. *See, e.g.*, App'x 53–54. Firestone and other colleagues "intentionally left her out of discussions," unfairly criticized her work performance, denied her request to attend a virtual legal conference despite another colleague's request being approved, and excluded her from a high-profile case "even though it fell squarely within her role." App'x 56–57. In 2021, LVMH delayed processing Ms. Newton's remote working expenses request and asked her to complete additional steps for reimbursement. App'x 62.

While these events were taking place in Ms. Newton's life, Congress began developing what would later become the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401–02. In November 2021, Congress subpoenaed Ms. Newton to testify about her experience at LVMH. App'x 72. Under oath, she repeated the allegations she had made previously: that she was sexually harassed and assaulted and that there was an ongoing retaliatory

hostile work environment at LVMH. *Id.* Earlier that month, Ms. Newton had submitted a reasonable accommodation request for remote work based on a PTSD diagnosis. *Id.* Before and after her congressional testimony, LVMH insisted her request was insufficient and began engaging in delay tactics, such as long periods of non-response and requiring at least five detailed medical notes. App'x 72–73.

On March 3, 2022, President Biden signed the EFAA into law. App'x 73. Nonetheless, Ms. Newton's alleged retaliation at LVMH continued. On March 25, LVMH denied her accommodation request. App'x 74. Firestone allegedly berated Ms. Newton and falsely accused her of dropping the ball on one of her matters, hired the law firm representing LVMH against Ms. Newton to host the Legal Group retreat, and gave her a time-consuming assignment while she was on vacation. App'x 74–76. Superiors at LVMH then attempted to exclude Ms. Newton from the retreat, failed to introduce her to a new intern, and excluded her from a dinner celebrating Firestone's tenure with LVMH. *Id.* At the April 2022 retreat, LVMH employees "continued to display outwardly hostile attitudes towards Ms. Newton, such as avoiding greeting her, giving her disdainful looks, and loudly remarking, 'Why is *she* here?' and 'What is she *doing* here?' in reference to Ms. Newton." App'x 75.

Rodney Pratt, who replaced Firestone on July 25, 2022, likewise excluded and ostracized Ms. Newton. App'x 76–79. Pratt was aware of Ms. Newton's

complaints about LVMH's retaliation and the sexual harassment she reported. App'x 76, ¶ 284. Within Pratt's first month, Ms. Newton alleged that he "requested a 'one on one' meeting with [her] without attorneys present to 'discuss or negotiate a settlement' of her claims against" LVMH. *Id.* After Ms. Newton refused to meet with Pratt about settling her claims, she alleged, Pratt "changed the rules for [her]," including by requiring preapproval before she could "speak on any panel or at any conference, something that had never previously been required." App'x 77.

In fall 2022, Ms. Newton continued to repeat her allegations against LVMH in social media posts, in an acceptance speech for an award she received from the Crime Victims Treatment Center, and on a keynote panel at a Women, Influence, and Power in the Law conference. App'x 77–78. Meanwhile, Pratt removed her from important communications for her matters, ignored her while she spoke in one-on-one meetings, agitatedly criticized her, and excluded her from a farewell dinner for another colleague and from a company event. App'x 78–79. Finally, on December 1, Pratt informed Ms. Newton that her employment would be terminated effective January 1, 2023, and instructed her to leave the office within the hour. App'x 79.

On December 11, 2023, Ms. Newton filed a complaint in federal court claiming LVMH unlawfully retaliated against her for repeatedly reporting sexual harassment and opposing LVMH's handling of her report. *See* SA 10. The district

court denied Defendants' motion to compel arbitration, holding that the EFAA applied to invalidate the arbitration agreement that Ms. Newton had signed as to retaliatory conduct that occurred after the EFAA's effective date. SA 21. But the court denied Ms. Newton's motion to amend her complaint to add allegations regarding sexual harassment and retaliation that formed the basis of her case in arbitration. According to the court, the post-EFAA retaliation Ms. Newton alleged was insufficiently related to the pre-EFAA retaliation to constitute a continuing course of conduct within the EFAA's scope. *See* SA 43. The court granted Defendants' motion to dismiss for failure to state a claim, finding that the post-EFAA conduct on its own did not state a claim for retaliation. SA 36–40. On motion for reconsideration, the court again refused to allow Ms. Newton to amend her complaint, reasoning her amendments were "futile" and not part of her "case" under the EFAA. SA 75–76, 71–72, 77.

## SUMMARY OF ARGUMENT

The EFAA provides survivors of sexual assault and harassment with the right to seek justice in court rather than be forced into arbitration proceedings. The EFAA applies to cases relating to sexual harassment claims or disputes that accrued or arose after its enactment on March 3, 2022. Because the retaliatory hostile work environment Ms. Newton endured at LVMH continued after the EFAA's enactment, the Act allows her, if she chooses, to invalidate her predispute

8

arbitration agreement and bring her claims in court. As both the Supreme Court and this Court have held, hostile-work-environment claims reaccrue whenever a new act furthering that environment occurs. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002); *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 88 (2d Cir. 2024).[3]

The EFAA accordingly applies to a claim for hostile-work-environment retaliation based on reporting sexual harassment if at least one constituent act occurred post-enactment. Because she alleged numerous retaliatory acts occurring after March 2022, and because those acts were part of the same continuing retaliatory environment that began before the EFAA's enactment, Ms. Newton should have been permitted to move forward in federal court with claims based on pre- and post-enactment retaliation.

Here, the district court correctly recognized that, if Ms. Newton alleged just one timely act that contributed to a retaliatory hostile work environment, her entire claim was timely. But it erred by refusing to apply that standard on the grounds that her pre-EFAA allegations were too dissimilar from her post-EFAA allegations

---

[3] Although *Morgan* considered Title VII hostile-work-environment claims, the same standard applies to hostile-work-environment claims under other statutes interpreted in tandem with Title VII. *See, e.g.*, *Banks v. General Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (applying *Morgan* to hostile-work-environment claims brought under the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.*, and 42 U.S.C. § 1981).

9

to constitute one retaliatory hostile-work-environment claim. It reached this conclusion, at least in part, by seemingly overlooking a number of Ms. Newton's allegations showing how similar the pre- and post-EFAA retaliation was.

Both before and after the EFAA, Ms. Newton alleged she was unfairly criticized, excluded from company events, and ignored by her superiors. Ms. Newton's pre- and post-EFAA allegations occurred regularly, were perpetrated largely by the same managers, and consisted of the same types of actions—in other words, they formed a single retaliatory hostile work environment that continued post-enactment. The EFAA therefore governs Ms. Newton's retaliatory hostile-work-environment claim against LVMH.

Second, the district court erred by denying Ms. Newton's request to amend her complaint and concluding that the EFAA did not apply to the proposed additional claims because those claims were not part of her "case." Under the EFAA, Ms. Newton's entire case must be exempt from arbitration. Congress intended the EFAA to have a broad and inclusive scope, as the statutory text reflects—the expansive term "case" signifies a legal proceeding as an undivided whole. The legislative record is in accord. The EFAA's lead sponsor, the House Report, and Congress's rejection of a bill that would have swept more narrowly all confirm that the Act applies to a plaintiff's *whole* case rather than individual claims.

It is undisputed that Ms. Newton's case "relat[es] to" a sexual harassment dispute and that her additional claims concern common questions as the claims in her initial complaint. The EFAA empowers plaintiffs to "elect" to bring a case in federal court and places no limitation on when that election must be made. Because Ms. Newton properly elected to join the claims to her complaint, they are a part of her "case." A contrary result would require bifurcation of proceedings and impose the very administrative burdens on plaintiffs that Congress sought to avoid.

Congress enacted the EFAA to ensure that plaintiffs like Ms. Newton would have their day in court if they wanted one. Because the EFAA applies to her retaliation claim, this Court should vacate the district court's decision dismissing her complaint.

## ARGUMENT

**I.     Under Supreme Court and Second Circuit precedent, Ms. Newton's retaliation claim accrued after the EFAA's enactment.**

Ms. Newton alleges a retaliatory hostile work environment that began before the EFAA's enactment and continued after it. The EFAA applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment"— i.e., March 3, 2022. Pub. L. No. 117-90, § 3, 136 Stat. 26, 28. Because a hostile-work-environment claim continues to reaccrue with each additional constituent act, Ms. Newton's entire claim ultimately accrued after the EFAA's effective date, and so is subject to the EFAA. *See Olivieri*, 112 F.4th at 88.

11

### A. A retaliatory hostile-work-environment claim reaccrues each time an act contributing to that environment occurs.

Hostile-work-environment claims—including retaliatory hostile-work-environment claims—continue to accrue with each act that furthers them. *See Morgan*, 536 U.S. at 118 ("[Title VII] does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability."); *Olivieri*, 112 F.4th at 88 (same with respect to retaliatory hostile-work-environment claim). As the Supreme Court explained, this is because hostile-work-environment claims are based on a pattern of unlawful behavior rather than one instance of discrimination or retaliation. *See Morgan*, 536 U.S. at 115–18. In *Morgan*, the Court reasoned that, because the "nature" of a hostile environment claim involves "repeated conduct," the claim "therefore cannot be said to occur on any particular day." *Id.* at 117. As a result, the effective date of accrual for a retaliatory hostile-work-environment claim is the date of "the last [retaliatory] act in furtherance of" that environment. *Olivieri*, 112 F.4th at 89 (internal quotation marks omitted).

The only limitation *Morgan* placed on this timeliness standard is that if the timely act bears "no relation to" the untimely acts or, "for some reason, such as certain intervening action by the employer, [is] no longer part of the same hostile environment claim," then the plaintiff cannot recover for the untimely acts. 536 U.S. at 118. *Morgan* also clarified that, even if some of the unlawful acts are

12

untimely, the untimely acts may still be relevant background evidence. *Id.* at 113.

A court therefore errs if it refuses to consider untimely evidence when assessing a

plaintiff's retaliation claim on the merits—or when analyzing whether a timely act

was in fact "part of" the previous pattern of retaliation or discrimination. *See, e.g.,*

*Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 169 (2d Cir. 2005) (reversing

where lower court had "neglected to recognize and weigh certain [time-barred]

adverse employment actions as relevant background evidence" when assessing a

retaliation claim at summary judgment); *see also Sooroojballie v. Port Authority*,

816 F. App'x 536, 542 (2d. Cir. 2020) (summary order) (reasoning that time-

barred acts were properly admitted as part of the plaintiff's hostile-work-

environment case and would have also been admissible as background evidence

regardless).

Accordingly, to successfully plead a timely retaliatory hostile-work-

environment claim,[4] plaintiffs need only plausibly allege *one* timely constituent

act. *See, e.g., Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir.

---

[4] As this Court has recognized, a plaintiff's claim that her employer's retaliation against her took the form of a hostile work environment is, at its core, a *retaliation* claim. Thus, a plaintiff need only ultimately prove that "the [employer's] actions, taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023). The substantive "severe or pervasive" standard does not apply to a retaliatory hostile-work-environment claim. *Id.* at 178–81.

2019) ("A retaliatory hostile work environment claim is timely 'so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period*.'") (quoting *Morgan*, 536 U.S. at 122) (emphasis added).

Therefore, a retaliatory hostile-work-environment claim continues to accrue post-EFAA—even where the retaliation began pre-EFAA—if the retaliatory conduct is sufficiently similar and continues post-enactment. *Olivieri*, 112 F.4th at 91. This was the case in *Olivieri*, where this Court recently held because "the last act in furtherance of the [retaliatory] hostile work environment" took place post-EFAA, the plaintiff's retaliation claim ultimately accrued after the EFAA's effective date. *Id.*

### B. Ms. Newton plausibly alleged a retaliatory hostile work environment spanning before and after the EFAA's passage, and the district court erred in holding otherwise.

Because Ms. Newton alleged that superiors and colleagues retaliatorily excluded and unfairly criticized her both before and after March 3, 2022, her entire retaliatory hostile-work-environment claim accrued after the EFAA's effective date and is therefore subject to it.

The district court erroneously held that the EFAA did not apply to any aspect of Ms. Newton's retaliatory hostile-work-environment claims that occurred pre-enactment because certain post-EFAA acts were too dissimilar to the

14

retaliation she experienced pre-EFAA. In so ruling, it failed to consider many of Ms. Newton's plausible allegations and misconstrued both *Morgan* and this Circuit's precedent.

### 1. Ms. Newton plausibly alleged a retaliatory hostile work environment that continued after March 2022.

Whether a timely act is sufficiently related to otherwise-untimely acts to be part of the same retaliatory hostile work environment depends on an individualized, fact-specific assessment of all the plaintiff's allegations. *See King v. Aramark Servs. Inc.*, 96 F.4th 546, 561–62 (2d Cir. 2024) (holding a discriminatory act within the limitations period can "render a hostile-work-environment claim timely if it is shown to be part of the course of discriminatory conduct that underlies the hostile work environment claim"); *see also Morgan*, 536 U.S. at 120–21 (affirming circuit court's reasoning that, because "pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently and were perpetrated by the same managers," they could be "part of the same actionable hostile environment claim") (quoting *Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1017 (9th Cir. 2000)).

For example, in *Olivieri*, the plaintiff's retaliatory hostile-work-environment claim accrued post-EFAA where timely allegations, like here, included delayed responses to accommodation requests and purposeful exclusion of the plaintiff from meetings. *See* 112 F.4th at 92. Pre-EFAA, Olivieri had alleged a pattern of

15

retaliatory acts, such as transferring her to a new role, reducing her bonus, and removing certain responsibilities. *Id.* at 81. The court concluded that Olivieri's post-EFAA allegations were sufficiently "similar in kind to the retaliatory conduct she experienced before her leave, such that [they were] 'part of the [same] course of discriminatory conduct that underlies' her" claims. *Id.* at 92 (quoting *King*, 96 F.4th at 561); *cf. McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74, 77–78 (2d Cir. 2010) (holding that a single sex-related comment within the limitations period was insufficiently related to previous harassment because it occurred after a roughly year-long "incident-free interval," in a different department to which the plaintiff had transferred at her own request (and involving a different coworker), and was different in kind from previous harassment).

Here, Ms. Newton alleged numerous and consistent instances of retaliation that occurred in the same department both before and after the EFAA, including by the same individuals. For example, before the EFAA, Firestone gave Ms. Newton her first negative review, excluded her from the hiring process for a new intern, and avoided personal interactions with her. App'x 42–45, 48–49, 51. After the EFAA, Ms. Newton alleged that Firestone again unfairly criticized, micromanaged, and ignored her, and that her superiors again both failed to introduce her to a new intern and excluded her from company events, such as the legal retreat and her superior's celebration dinner. App'x 75–76. Similarly to *Olivieri*, Ms. Newton also

16

alleged a series of pre-EFAA retaliatory incidents related to her accommodation requests that continued after the EFAA, such as delay tactics and hostility.

Ms. Newton's allegations relating to Firestone's replacement, Pratt, are strikingly similar. Just as Ms. Newton alleged that Firestone had taken control of one of her matters without notifying her pre-EFAA, she alleged that Pratt started to ice her out of communications on her own matters post-EFAA. App'x 48, 78. Pratt, like Firestone, was aware of Ms. Newton's reports of sexual harassment and lawsuit[5]—within a month of his start date, he requested that she meet with him alone to discuss settlement. App'x 76. Pratt would "ignore[]" her when she spoke in one-on-one meetings, "except to sometimes agitatedly criticize her." App'x 78. Similarly to Firestone, Pratt excluded Ms. Newton from a company dinner and a separate company event. App'x 78–79. As in *King*, Ms. Newton was ultimately terminated after a "long-running" pattern of retaliation by Firestone, Pratt, and others. 96 F.4th at 562.

Ms. Newton's pre- and post-EFAA allegations, in short, involved many of the same types of actions, occurred frequently, and were perpetrated by the same

---

[5] *See, e.g.*, App'x 77, ¶ 287 (alleging that Pratt told Ms. Newton in August 2022 that he required preapproval before she agreed to speak on any panel or at any conference); *id.* ¶ 288 (alleging that "[i]n or around September or October 2022, Defendants objected to Ms. Newton speaking on a keynote panel … in which she would be asserting her rights to be free from gender discrimination by her employer").

managers. She has thus adequately pled that they are one retaliatory hostile environment. *Morgan*, 536 U.S. at 120–21.

### 2. The district court erred in finding Ms. Newton's post-EFAA allegations unrelated to the retaliation she alleged pre-EFAA.

The district court erred when it found Ms. Newton's pre-EFAA allegations were too dissimilar from her post-EFAA allegations to constitute one retaliatory hostile-work-environment claim. The court based this finding on three reasons: (1) Ms. Newton's pre-EFAA allegations primarily related to her previous supervisor, Firestone, whom Pratt replaced about two months after the EFAA's enactment; (2) Ms. Newton's testimony before Congress and her refusal to settle her legal claims were intervening changes; and (3) some of the retaliation Ms. Newton experienced post-EFAA included her termination and denial of accommodation and of a promotion, which it found dissimilar from her pre-EFAA allegations. *See* SA 28–30.

First, the district court erred in concluding that a change in supervisor was categorically sufficient to break a chain of continued acts of retaliation. Citing *McGullam*, the district court relied heavily on the fact that Pratt, rather than Firestone, engaged in *some* of the alleged post-EFAA adverse actions. But this emphasis is misplaced. As an initial matter, Firestone herself continued to retaliate against Ms. Newton post-EFAA, through her retirement in July 2022. Thus, Ms. Newton's allegations of pre- and post-March 2022 retaliation by Firestone

18

plausibly show the same retaliatory work environment continuing—and reaccruing—after the EFAA's enactment.

Moreover, Pratt's replacement of Firestone does not automatically disconnect any retaliation he committed from the existing retaliatory hostile work environment. *Morgan* and this Circuit's precedent are clear that the inquiry is a fact-specific analysis as to whether timely and untimely actions are themselves related, not a formalistic on-off switch based on whether the same person committed all retaliatory acts. In *McGullam*, multiple factors—including the plaintiff's departmental transfer, the substantive difference in the remarks, and the time lag—were all relevant to the court's finding of unrelatedness. *See* 609 F.3d at 77–78. That a different colleague was responsible for the later behavior was relevant to the court's analysis but not dispositive. *Id.* And *McGullam* recognized that "[t]emporal discontinuity, for instance, clearly does not by itself preclude a finding of relatedness under *Morgan*." *Id.* at 82 (Calabresi, J., concurring); *see id.* at 79 (majority opinion).

Here, the pre- and post-EFAA acts are largely of the same kind, committed in the same department, and close in time. Firestone excluded and ostracized Ms. Newton, and so did Pratt. *See supra* Section I-B-1. The district court isolated allegations relating to Ms. Newton's termination and refusal to speak with Pratt about settlement, finding them unrelated to Firestone's previous alleged retaliation.

19

*See* SA 27–28. But the district court failed to address allegations illustrating the similarities between the two supervisors' patterns of retaliation: for example, excluding her from a farewell dinner for a colleague, failing to introduce her to interns, and ignoring her during one-on-one interactions. That Pratt and Firestone engaged in the same types of acts indicates that Pratt simply picked up where Firestone had left off—thereby furthering the same retaliatory environment that was already well underway when Pratt started at LVMH.

Second, the district court erred in concluding that Ms. Newton's congressional testimony and refusal to settle constituted intervening changes sufficient to disrupt the retaliatory work environment. *See* SA 29. In other words, according to the court, by refusing to settle her legal claim and by complying with a congressional subpoena, Ms. Newton interrupted her own hostile work environment because her colleagues' retaliation was now in part a reaction to her most recent protected activity.

The court's reasoning cannot be squared with Title VII or the case law construing it. As the Supreme Court recognized, Title VII's "antiretaliation provision seeks to secure [Congress's] primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). Far from interrupting the

20

ongoing retaliation she was experiencing, Ms. Newton's opposing her employer's unlawful practices in congressional testimony and refusing to settle legal claims are further examples of exactly what Congress had in mind. Moreover, it would make little sense to infer that LVMH's motivation to retaliate against Ms. Newton for her original reports of harassment evaporated when she doubled down on those reports and testified to Congress—nor would such an adverse inference be warranted at the motion-to-dismiss stage. LVMH continued the same retaliatory pattern post-enactment because Ms. Newton continued to make the same allegations before and after the EFAA. Plaintiffs that engage in a pattern of repeated protected conduct do not thereby defeat their own retaliatory hostile-work-environment claims.

*McGullam*, on which the district court relied for this point, is inapposite. *See* SA 30. The intervening change in *McGullam* was the employee transferring to another department, after which she experienced little harassment, and what she did experience was different in nature from before. *See supra* pp. 16, 19. Here, by contrast, Ms. Newton's testimony and refusal to settle only reinforced the same complaints she had previously made. That Ms. Newton repeated the same allegations consistently throughout the entire period—and LVMH consistently retaliated against her throughout that period—only strengthens her retaliation claim.

21

Third, the district court reasoned that Ms. Newton's post-EFAA allegations were unlike her pre-EFAA allegations because the former included a retaliatory termination while the latter did not.[6] *See* SA 29–30. But that reasoning is irreconcilable with this Court's recent holding that an employee's termination within the limitations period could be "part of an ongoing discriminatory pattern or practice of sex-based harassment." *King*, 96 F.4th at 561–62.[7] That was true in *King* even though most of the alleged harassment was untimely and had, perhaps self-evidently, not included terminating her. *Id.* Moreover, the district court's logic would only serve to penalize retaliation victims whose retaliation escalates over time. That a series of retaliatory acts culminated in increasingly severe forms of retaliation should bolster—not undermine—a retaliation claim. *See, e.g., Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) ("Hostile work environment claims by their very nature require ongoing conduct …. [The plaintiff]'s allegations are not bounded by discrete temporal boundaries, but rather describe an escalating progression of harassment.").

---

[6] The district court reasoned that Ms. Newton's allegation that Pratt retaliatorily denied an accommodation request also differed in kind from the pre-EFAA allegations. *See* SA 29. But she also alleged a pre-EFAA pattern of LVMH denying or resisting her accommodation requests. *See supra* pp. 5–6.

[7] Thus, the district court also misunderstood *Morgan* and *King* to the extent it reasoned that the mere fact that some of Defendants' post-EFAA acts *were discrete* rendered them categorically unrelated to a retaliatory hostile-work-environment claim. *See, e.g.*, SA 26–27.

22

In any case, the district court failed to explain why one post-EFAA allegation that differs from Ms. Newton's pre-EFAA allegations should overcome the dozens of allegations that are alike. Even if Ms. Newton's termination were too dissimilar to be part of the preexisting retaliatory hostile work environment, she need only allege *one* timely act to avoid dismissal under *Morgan*. She did more than that—she alleged numerous retaliatory comments, exclusions, and criticisms post-EFAA that were highly similar to the comments, exclusions, and criticisms she had experienced previously. *See supra* Section I.B.1.

The district court seemingly went astray in part because it attached talismanic meaning to Ms. Newton's use of the phrase "materially different" while responding to one of LVMH's arguments regarding a separate legal issue. *See* SA 47 (citing Pl. Opp. 18–19). In responding to LVMH's argument that she had already elected to arbitrate her claims, she pointed out that the claims she brought now were materially different from previous claims she had alleged in arbitration. Even there, though, Ms. Newton still clarified that, "[n]onetheless, as alleged in the amended complaint, these are all continuing violations which mandate their exclusion from mandatory arbitration under the EFAA." Pl. Opp. 19. This decontextualized argument cannot, therefore, bear the weight the district court assigned it. Under *Morgan*, the alleged retaliation Ms. Newton experienced pre-

23

and post-EFAA formed one actionable hostile-work-environment claim. 536 U.S. at 120–21.

## II. Because Ms. Newton's case relates to a sexual harassment dispute, her entire case is exempt from arbitration under the EFAA.

As the district court correctly recognized, Ms. Newton's lawsuit falls squarely within the EFAA because it is a case "relating to" a sexual harassment dispute. SA 20–21 (citing *Olivieri*, 112 F.4th at 92). That finding alone compels the conclusion that she may elect to invalidate the arbitration agreement as to her case. *Id.* (citing *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 559–60 (S.D.N.Y. 2023)). The district court erred, however, by confining the scope of Ms. Newton's "case" to the claims in her original complaint and excluding claims she sought to add by amendment because they were not part of "*this* case before *this* Court." SA 43. That conclusion is inconsistent with both the statute itself and Congress's intent in enacting it.

### A. Congress intended the EFAA to exempt entire cases, not just individual claims, from arbitration.

The EFAA's design reflects Congress's insistence that survivors must be able to pursue justice with their full case in a single forum in open court. The EFAA's statutory text is unambiguous: At the plaintiff's election, "no predispute arbitration agreement … shall be valid or enforceable with respect to a *case* which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute

24

or the sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). Congress's use of the word "case," rather than "claim," was deliberate, and courts applying the EFAA have rightly emphasized that the statute blocks arbitration of the entire proceeding. *See, e.g.*, *Johnson*, 657 F. Supp. 3d at 560 ("Congress chose to give survivors the right to proceed in court with their entire case, not just isolated claims.").

The Act's legislative history reinforces this point. Responding to questions about the EFAA's scope, several senators emphasized that plaintiffs must not be forced to split their claims and litigate their cases across two fora. In the words of a lead sponsor of the Act, keeping cases whole "is exactly what we intended the bill to do." *See* 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand). As Senator Gillibrand explained, "[w]hen a sexual assault or sexual harassment survivor files a court case in order to seek accountability, her single case may include multiple claims." *Id.* Rather than force her to "relive that experience in multiple jurisdictions," her claims must be able to "proceed together" so that she can "realize the rights and protections intended to be restored to her by this legislation." *Id.*

The House agreed, emphasizing that a "suit" by "an employee" who had been "assaulted or harassed at work" should be permitted access to a "court of law." H.R. Rep. No. 117-234, at 3. Representative Scott affirmed this

25

understanding, stating on the House floor that "the best reading" of the Act "is that it was meant to encompass" plaintiffs who bring harassment and related claims for "negative employment actions" together in one case. 168 Cong. Rec. H991 (daily ed. Feb. 7, 2022) (statement of Rep. Bobby Scott).

Further underscoring this point, Congress chose to move forward with the EFAA instead of another bill, addressed during the same session, that would have limited the legislation to "claim[s]" of sexual assault while allowing other claims in the same case to remain in arbitration. *See* Resolving Sexual Assault and Harassment Disputes Act of 2021, S.3143, 117th Cong. (2021). In passing the EFAA instead, Congress rejected a claim-splitting approach and chose to exempt from arbitration "*any case* which … relates to … a sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added); *see also* 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand) (explaining that the EFAA applies when a plaintiff is "alleging conduct constituting a sexual harassment dispute or a sexual assault dispute," not when each of their claims relates to such disputes).

## B. Ms. Newton's proposed claims are part of this case and therefore exempt from arbitration.

Under the Federal Rules of Civil Procedure, it is undisputed that Ms. Newton's proposed claims—arising from the same employment relationship, involving the same parties, and concerning overlapping factual allegations—would be properly joined. As a practical matter, claims are properly joined in a "case"

26

when they are: (1) brought against the same defendant, Fed. R. Civ. P. 18; (2) "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20; or (3) concern common questions of law or fact, *id*. Thus, if Ms. Newton had included the proposed claims in her original complaint, they would have been part of this "case" under the EFAA. *See* 168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst) (emphasizing that "harassment or assault claims" can be "joined" with other "employment claims" when there is a "key nexus" between the claims—that is, when the claims are properly joined).

Moreover, nothing in the EFAA requires a plaintiff to cabin her case to the specific claims pleaded in an initial filing. The EFAA empowers plaintiffs to "elect" to invalidate a pre-dispute arbitration agreement, and Congress placed no limitation on when that election may be made. 9 U.S.C. § 402(a); *see also Elect*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/elect (last visited Sept. 29, 2025) ("[T]o choose (something, such as a course of action) especially by preference."). As one court has observed, "[n]o language in the EFAA says once a plaintiff initiates arbitration she cannot file a lawsuit in court and 'elect' to invalidate the arbitration agreement. Congress could have so limited the EFAA, but it did not do so." *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1216 (N.D. Cal. 2024), *appeal docketed*, No. 25-1532 (9th Cir. Mar. 10, 2025). Nor is

27

amendment futile simply because Ms. Newton previously filed some of her claims in arbitration. *Olivieri*, 112 F.4th at 92 (holding that once a plaintiff alleges facts sufficient to establish a sexual harassment dispute, the EFAA's protections apply to the entire action). That the proposed claims are currently in arbitration does not foreclose Ms. Newton from electing to pursue them in court—as she had attempted to do by first filing suit in state court. Ms. Newton's being compelled into arbitration by LVMH does not mean that she "elected" to arbitrate. Ultimately, if Ms. Newton were permitted to join the proposed claims, the EFAA would cover them.

Thus, the district court erred in holding that amendment would be futile on the ground that the claims would not be part of this "case." Once properly before the court, claims joined by amendment are part of the plaintiff's "case" and, under the EFAA, exempt from compelled arbitration. *See Johnson*, 657 F. Supp. 3d at 562 (holding the EFAA applies to an "entire[]" case and noting that the court permitted plaintiff to add claims by amendment).

### C. Keeping entire cases together promotes efficiency, protects survivors, and reflects the realities of harassment.

Congress enacted the EFAA with a pragmatic recognition of how sexual harassment disputes arise and how survivors seek redress. Harassment is rarely experienced in isolation; it often gives rise to multiple, interrelated claims for retaliation, discrimination, and harassment. For example, a worker may experience

28

discrimination based on both their sex and other aspects of their identity, like their race, ethnicity, or disability. *See Gorzynski v. JetBlue Airways, Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[W]here two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components.").

This Court has long emphasized that it is "fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times." *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003). Forcing survivors to divide these claims across multiple fora would foster precisely the inefficiencies and inequities Congress sought to eliminate.

As the legislative record reflects, forced "bifurcation" and duplication would "only lead to unnecessary expense and an administrative burden" for the court, the parties who must defend against or advance overlapping allegations in different forums, and third parties who may have to appear to testify multiple times. *See* 168 Cong. Rec. H991 (daily ed. Feb. 7, 2022) (statement of Rep. Bobby Scott). Fragmentation of individual claims forces survivors to retell traumatic events in multiple venues, multiplying the emotional costs of seeking justice, increasing the risk of inconsistent outcomes, and wasting judicial and party resources. By

29

contrast, adjudicating all claims in one forum ensures that factfinders benefit from the full context surrounding harassment allegations.

Accordingly, requiring Ms. Newton to arbitrate some of her claims while litigating others in federal court would undermine efficiency and distort the remedial scheme Congress enacted.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be vacated and the case remanded for further proceedings.

Respectfully submitted,

/s/ Rachel Smith
Rachel Smith
Lily Braafladt*
Elizabeth E. Theran
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Tel.: (202) 588-5180
rsmith@nwlc.org

Jeffrey R. White
AMERICAN ASSOCIATION FOR JUSTICE
777 6th Street NW, #300
Washington, DC 20001
Tel.: (202) 617-5620
Jeffrey.White@justice.org

* Request for recent graduate to appear pursuant to L.R. 46.1(e) pending

*Counsel for Amici Curiae NWLC, AAJ, ERA, NELA, and PJ*

30

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 6,812 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14 point.

/s/ Rachel Smith
Rachel Smith
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Tel.: (202) 588-5180
rsmith@nwlc.org

Dated: October 9, 2025

31

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2025, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the Court's ACMS system. I certify that all counsel of record are registered ACMS users, and service will be accomplished via the ACMS system.

/s/Rachel Smith
Rachel Smith
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Tel.: (202) 588-5180
rsmith@nwlc.org

**APPENDIX (Additional Amici Statements of Interest)**

**Equal Rights Advocates ("ERA"):** The ERA is a nonprofit organization that has been advocating for gender justice in workplaces across the country since 1974. ERA has represented plaintiffs in dozens of sexual harassment cases in federal and state courts and has appeared as amicus curiae numerous times, including at the U.S. Supreme Court, in cases that address sexual harassment and retaliation against women or people of other gender identities for reporting sexual harassment and/or assault. In addition, ERA has educated hundreds of workers through its Advice and Counseling program regarding their legal rights to be free from sexual harassment and retaliation. ERA advocated for the passage of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act and has a strong interest in ensuring that survivors can vindicate their rights to be free from sexual harassment and retaliation in courts across the country.

**National Employment Lawyers Association ("NELA"):** Founded in 1985, NELA is the largest bar association in the country focused on empowering workers' rights attorneys. NELA and its sixty-nine circuit, state, and local affiliates have a membership of over 4,000 attorneys who are committed to protecting the rights of workers in employment, wage and hour, labor, and civil rights disputes. NELA members represent workers who have experienced sexual harassment and

33

assault in the workplace, giving NELA a unique interest in ensuring that the EFAA is interpreted correctly by the courts.

**Public Justice:** Public Justice is a national public interest advocacy organization that fights against abusive corporate power and predatory practices, assaults on civil rights and liberties, and the destruction of the earth's sustainability. The organization maintains an Access to Justice Project that pursues high-impact litigation and advocacy efforts to remove procedural obstacles that unduly restrict the ability of workers, consumers, and people whose civil rights have been violated to seek redress in the civil court system. Towards that end, Public Justice has a longstanding practice of challenging the unlawful use of mandatory arbitration clauses that deny workers their day in court. Public Justice has specifically advocated for full implementation of the EFAA, including serving as counsel and filing amicus briefs in cases involving the application of the EFAA in cases across the country.